Argued April 25, reversed and remanded May 28, rehearing denied
June 25, 1918.

## FREDERICK *v.* SHERMAN.

(173 Pac. 575.)

**Fraud—Action—Evidence.**

1. In an action to recover money paid to defendants for the exclusive right to sell patented automobile tires in the state on the ground that defendants had nothing to sell because the contract between the manufacturing company under whom defendants claimed and the owner of the patent right had been canceled, evidence *held* to show that such contract had not been canceled when plaintiff's contract with defendants was made.

**Fraud—Fraudulent Concealment of Facts—Cause of Action.**

2. In such case the fact that defendants knew that the manufacturing company would not be able to supply tires to plaintiff and fraudulently concealed such information from the plaintiffs, who had no knowledge thereof, did not constitute a cause of action to rescind the contract and to recover damages, in the absence of any fiduciary relation between the parties or any special state of facts wherein silence becomes in effect an active misrepresentation.

[As to effect of fraudulent concealment by vendor, see note in 15 Am. Dec. 106.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

This is an action to recover money. The complaint recites that on August 14, 1915, defendants induced plaintiffs to purchase from them the exclusive right to sell certain patented automobile tires in the State of Oregon, by falsely representing that the Davis-Fry Manufacturing Company was the owner of and had the exclusive right of manufacture and sale of such tires in all the territory of the United States. That defendants, through said company, had the exclusive right to sell such tires in the State of Oregon, except as to certain specified counties, and that for the sum of $1,000, defendants would assign to plaintiffs the rights and privileges granted to them by such manufacturing com-

pany; that relying upon such representations, they contracted with defendants therefor, and paid them the $1,000; that these representations were false, in that the Davis-Fry Manufacturing Company was not the owner and did not have any right to manufacture or sell the tires, for the reason that the contract between the company and the owner of the patent right, had been canceled on May 11, 1915, which fact was then known to defendants, but was unknown to plaintiffs. These allegations are followed by the following paragraphs:

"That defendants at all times while soliciting and inducing plaintiffs to contract with and pay defendants said sum of $1,000 as hereinbefore alleged and set forth, well knew that said Davis-Fry Manufacturing Company was financially unable to manufacture 'Hercules Tires' sufficient to supply a reasonable demand in the territory in which defendants were trying to induce plaintiffs to purchase the exclusive right of sale of said 'Hercules Tire,' even if allowed to continue such manufacture by the Hurley Hercules Pneumatic Tire Company, and defendants further well knew that said Davis-Fry Manufacturing Company was and would be at all future times wholly unable to comply with the conditions of its contract with said Hurley-Hercules Pneumatic Tire Company, which contract defendant F. H. Sherman had executed as President and on behalf of said Hurley-Hercules Pneumatic Tire Company, and which contract required said Davis-Fry Manufacturing Company to manufacture a sufficient number of 'Hercules Tires' to supply the demand therefor in the 'territory under the government of said United States of America,' and which contract further provided that a failure to do this would give the said Tire Company the right to cancel said contract; that defendants further knew that said provisions in said contract between said Hurley Hercules Pneumatic Tire Company and said Davis-Fry Manufacturing Company were wholly unknown to plaintiffs or either of them, and said defendants con-

cealed said provisions of said contract from plaintiffs for the purpose of inducing plaintiffs to pay them said sum of $1,000 for the alleged right to sell said 'Hercules Tire' in the State of Oregon, which concealment was fraudulent on the part of defendants.

"That the said Davis-Fry Manufacturing Company had never at any time complied with the terms of its contract with said Hurley Hercules Pneumatic Tire Company after the same was entered into, which fact was well known to defendants but was wholly unknown to plaintiffs or either of them, which fact was fraudulently concealed from the plaintiffs by defendants for the purpose of inducing plaintiffs to pay defendants said sum of $1,000; that said Davis-Fry Manufacturing Company has become wholly insolvent and bankrupt and has ceased to transact business of any kind, and its affairs are now being administered upon by the bankruptcy courts of the United States of America for the District of California."

Issues having been joined, there was a trial to a jury, resulting in a verdict and judgment for plaintiffs, and defendants appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellants there was a brief and an oral argument by *Mr. John H. Hall.*

For respondents there was a brief and an oral argument by *Mr. Plowden Stott.*

BENSON, J.—There are a number of assignments of error, but the conclusions reached by us render it unnecessary to consider any of them except the action of the trial court in denying defendants' motion for a judgment of nonsuit, made at the conclusion of the hearing of plaintiffs' testimony and after plaintiffs had rested. Plaintiffs' right to rescind the contract and recover the purchase money paid by them, is based, by

the complaint, upon two grounds: (1) that defendants had nothing to sell, because, at the time of the transaction, the contract between the manufacturing company and the owner of the patent right had been canceled: (2) that defendants had knowledge of the fact that the manufacturing company was then in such a shaky financial condition that they would not be able to supply tires in sufficient quantities, and that they fraudulently concealed this information from plaintiffs who were ignorant of the facts.

1. Upon the first of these grounds it may be said that a careful inspection of the evidence discloses a complete failure of proof. The evidence upon this subject is to the effect that in May of the same year, the president of the corporation owning the patent right, served a written notice of cancellation upon the manufacturing company, which declined to concede the right of the former to annul the contract in that manner, and demanded an arbitration of the issue, as provided in the contract itself, and thereafter, following the terms of the contract, both parties appointed arbitrators, but nothing further was done in the matter, and the manufacturing company continued to make and sell tires and pay the required royalty to the owner of the patent, until December, in which month the manufacturing company went into bankruptcy, and from the date of their purchase, in August, until December, plaintiffs received tires from them and sold them to customers. The evidence therefore discloses affirmatively that the contract had not been canceled when plaintiffs entered into their contract with defendants.

2. We are then called upon to say whether the allegations of the complaint in regard to fraudulent concealment of facts, states a case of actionable fraud. Story

on Contracts (5 ed.), Section 517, in discussing this subject says:

"The law never undertakes to refine upon nice ethical distinctions; and although it lends no countenance to injustice, and will not support immorality, yet it often stops short of enforcing a merely honorary obligation. Questions of law must be determined upon general principles, which, although they may reach the aggregate of cases, may often fail to extract the sting of injustice and immorality from the individual case. Thus, it is the general policy of the law, in order to induce vigilance and caution, and thereby to prevent those opportunities of deceit which lead to litigation, to throw upon every man the responsibilities of his own contracts, and to burden him with the consequences of his careless mistakes."

Fry on Specific Performance (5 ed.), page 353, quotes the foregoing expression of Story with approval, and says:

"But it has never, it is believed, been held by our Courts, that there is any general obligation to disclosure on the part of a vendor or purchaser of chattels or realty, though the person maintaining silence may know that the other party is acting under an erroneous impression."

Bigelow on Fraud, page 590, has this to say:

"Now silence alone, it may be declared as a general rule, is not unlawful in transactions between men at arm's-length, however great the advantage gained thereby; a man's unpublished thought is surely his own. But it must be understood at the outset, that by silence we mean entire silence as distinguished from that sort which merely keeps back part of the truth told or suggested. This latter is nothing else than misrepresentation, and has already been referred to. But speaking of pure silence, the general rule stated is very strong. It governs, even though the silence was meditated, and with knowledge that the opposite party was laboring

under mistake or ignorance. Thus, neither the seller nor the buyer of goods is bound to communicate intelligence of external circumstances, exclusively within his own knowledge, which might influence the market value of the commodity.''

It is needless to multiply citations. This general rule is applicable except in certain excepted cases, wherein there is a fiduciary relation existing between the parties, or some special state of facts wherein silence becomes in effect an active misrepresentation. It would take too much space to enumerate these, for here the parties dealt at arm's-length, and none of those exceptional facts are recited. We conclude therefore that the alleged concealment of facts does not constitute actionable fraud, and the trial court erred in denying a judgment of nonsuit. The judgment is reversed and the cause will be remanded with directions to enter a judgment of nonsuit.

REVERSED AND REMANDED WITH DIRECTIONS.

REHEARING DENIED.

McBRIDE, C. J., BURNETT and HARRIS, JJ., concur.