Argued November 20, reversed and decree rendered December 30, 1919, rehearing denied January 27, 1920.

## PALMITER *v.* HACKETT.

(185 Pac. 1105; 186 Pac. 581.)

**Fraud—Mere Silence not Fraud Where No Duty to Speak.**

1. Individuals dealing at arm's-length must look out for themselves, and mere silence is not fraud where no duty is imposed upon one to speak, but a half truth spoken with the design of influencing the opposite party, where he has not equal means of knowledge, is in itself fraudulent.

Evidence—No Presumption of Knowledge of Ordinances.

2. The proposition that every man is presumed to know the law applies only to the general laws of the land, and not to city ordinances, except in proceedings in municipal courts, in view of Section 90, L. O. L.

Exchange of Property—Fraudulent Concealment.

3. Where one exchanging a building for other real property has actual knowledge of a city ordinance prohibiting the use of a building simultaneously as a garage and as a residence, he is guilty of fraud where he states that the first floor was rented as a garage for $25 a month, and the second floor for $25 as living or housekeeping rooms, and that the property could be continued for the uses named; the other person not knowing of the ordinance.

Cancellation of Instruments — Offer to Do Equity not Necessary Where Court may Protect Defendant.

4. The maxim that he who seeks equity must do equity is not violated by failure of the plaintiff, in a suit to rescind an exchange of lands, on the ground of fraud, to allege restoration of and offer to return the consideration, for by his application he tacitly invites the court to protect the defendant by decreeing a restoration in consideration of a rescission.

### PETITION FOR REHEARING.

Contracts—Representation Made Recklessly Without Knowledge of Truth Fraudulent.

5. One of the elements respecting a fraudulent statement warranting a rescission of a contract is that the one making it must either know that it is false, or make it recklessly without any knowledge of its truth and as a positive assertion.

Fraud—One Making Reckless Statement of Fact must Disclose Subsequent Knowledge of Falsity.

6. If a party is so reckless as to make a statement which in fact is untrue and while negotiations are in progress he discovers it is not true, it is his duty to state the whole truth to the other party.

From Hood River: FERD W. WILSON, Judge.

Department 1.

The substance of the complaint is that the plaintiffs were the owners of some acreage in Hood River County and the defendants Nelson Hackett and W. A. Hackett were the owners of a certain lot in Portland. The property of the plaintiffs was encumbered by a mortgage of $1,600, that of the defendants by two mortgages aggregating $3,100. Negotiations were opened

for an exchange of properties and, as the plaintiffs allege, for the purpose of inducing them to make the exchange the defendants represented:

"That said lot was improved with a two-story frame building with a good, rentable garage on the first or ground floor thereof, and housekeeping or living-rooms on the second story thereof; that the same was then and had been for a long time leased and rented to tenants for the monthly rental of $50 a month; that the lower or ground story of said building was suitable and rentable for use and occupation as a garage; that the upper story thereof was suitable and rentable as living or housekeeping rooms; and that the property could be continued for the uses named."

Other averments upon which the plaintiffs rely state representations said to have been made by the defendants respecting the value of their property. The plaintiffs claim to have relied upon the statements of the defendants, and aver that they were fraudulent and made with the intent to wrong and defraud the plaintiffs, and to procure their property by means of the fraud. The complaint further says in substance that the Portland property belonging to the defendants was not at said time usable and rentable for living or housekeeping rooms on the second story thereof, and was not at said time leased and rented for the rental of $50 or for any other sum in excess of $25, but, on the contrary, it was well known to defendants that by the terms of Portland City Ordinance No. 34,764, approved November 27, 1917, entitled "An ordinance amending Section 683 of Ordinance No. 33,911, the Building Code covering garages and declaring an emergency," and by the terms of Section 682 of Portland City Ordinance No. 33,911, entitled "An ordinance providing building regulations to be known as the Building Code," approved March 13, 1918, it was

provided that no tenants might occupy the second story of a frame building constructed similarly to the one on said lot, with a large garage underneath; and also well knew that, acting under the terms of said ordinance and its police powers, the proper city authorities had notified said tenants that occupancy of said second story by tenants would not longer be permitted by said city authorities. Further allegations show what is meant by a "large garage" within the purview of the city laws. The plaintiffs say they did not discover the falsity of the utterances of the defendants until after the exchange had been made, when the former demanded a reconveyance of the property in Hood River County and offered to place the defendants in the same position they were before, by returning all that the plaintiffs had received in the exchange.

The answer challenges all the imputed fraud and recites the exchange of properties as viewed from the standpoint of the defendants. The reply traverses much of the new matter in the answer.

The trial court passed a decree for the defendants, dismissing the suit and declaring the defendants Nelson Hackett and his wife the owners of the Hood River property. The plaintiffs appeal.

REVERSED.    DECREE RENDERED.

For appellants there was a brief over the name of *Messrs. Bronaugh & Carter,* with an oral argument by *Mr. Jerry E. Bronaugh.*

For respondents there was a brief and an oral argument by *Mr. Ernest C. Smith.*

BURNETT, J.—The vital contention in the suit is whether the representation of the defendants about the

rentability of the property was fraudulent. The testimony is to the effect that the negotiations about the trade began early in December, 1918, and continued until January 27, 1919, when a contract was entered into outlining the terms of the exchange, followed by an exchange of deeds February 6, 1919. When the transaction was first broached, the defendants told the plaintiff Palmiter that the property was rented, the upper story as an apartment wherein a family was residing, and the ground floor as a garage, each at $25 per month, totaling $50 per month. The building was of wooden frame construction, sided with rustic and only partly ceiled. During the pendency of the negotiations the plaintiff husband examined the property and saw its physical condition. Meanwhile, the city authorities had waited upon the agent of the defendants in charge of the property and informed him of the ordinance which forbade the use of such a building simultaneously as a garage and as a residence. The agent immediately communicated this to the defendants and under instructions from his principal notified the tenants of the upper story to vacate. In all subsequent negotiations, however, although this warning from the city officials was known to both Nelson and W. A. Hackett, they scrupulously avoided saying anything to the plaintiffs about the matter. The latter were ignorant of the ordinance and of the notification which the city officials gave to the agent of the defendants and which was by him communicated to the defendants. The evidence is plain that the building was not rentable simultaneously as a garage and as a dwelling place; that this was known to the defendants and not to the plaintiffs; and that the representation about the availability of the property for leasing

was made to induce the exchange on the part of the plaintiffs.

In *Boelk* v. *Nolan,* 56 Or. 229 (107 Pac. 689), the plaintiff had left his realty in Tillamook County in charge of a friend and had gone to California for the benefit of his health. He had not been heard of for several years and in his interest the friend, fearing he was dead, allowed the property to go to sale for taxes and bought it in for the purpose of holding it in trust for the plaintiff. The defendant managed to ascertain where the plaintiff was, went to California and bought the property for a trifling sum, representing to him that his land had been sold for taxes; that his title was gone; and that he, the defendant, wanted the deed from the plaintiff to confirm a title which he himself had acquired. Although well known to him, the defendant said nothing about the attitude and purpose of the friend whom the plaintiff left in custody of the property. The court there held:

"It was the duty of the defendant, when he undertook to inform plaintiff about the condition of the latter's title to the land, to make a full, truthful and complete declaration of all the conditions, within his knowledge, affecting it; and his failure so to do amounts to such a fraud as entitled plaintiff to a cancellation of his deed."

1. The substance of the holding is that when a defendant opens his mouth to make declarations respecting the property involved, he must speak the whole truth, and that a suppression of part of the fact is fraud when made to induce a purchase. This does not infringe upon the rule that individuals dealing at arm's-length must look out for themselves and that mere silence is not fraud where no duty is imposed upon one to speak. A half truth, however, spoken with

a design of influencing the opposite party where he has not equal means of knowledge, is in itself fraudulent. See, also, *Weikel* v. *Stearns,* 142 Ky. 513 (134 S. W. 908, 34 L. R. A. (N. S.) 1035).

2, 3. It is contended by the defendants that the plaintiffs were bound equally with them to know the city ordinances. It is an old saying that, "Every man is presumed to know the law." But this applies to the general laws of the land. It is said in 28 Cyc. 393:

"The general rule is well settled that municipal ordinances and by-laws are not laws of which judicial notice will be taken, but facts to be pleaded and proven. If not duly pleaded, they cannot be proven; and if duly pleaded and not proven in legal method, the action must fail no matter how notorious the ordinance may have been. The general rule, however, is held not to apply to proceedings brought in a municipal court, for here the ordinance is the peculiar law of the forum, of which the court is bound to take judicial notice, and this obviates any necessity for pleading the ordinance."

The litigation in hand has no relation to any proceeding in a municipal court and must be determined by the general law of the land. Our statute, Section 90, L. O. L., requires city ordinances to be pleaded as facts, which shows that the courts will treat them as facts. Moreover, the plaintiffs did not have equal opportunity with the defendants to know about the ordinances, because the attention of the latter had been especially called to the matter, through their agent, by the city authorities. The defendants were in possession of knowledge affecting the rentability of the property, which was not possessed by the plaintiffs, and it was manifestly concealed with the purpose of inducing the trade. The action of the defendants in keeping

that knowledge from the plaintiffs constitutes a fraud in law sufficient to vitiate the transaction.

4. In *Owen* v. *Jones,* 68 Or. 311 (136 Pac. 332), the opinion quotes with approval from a decision rendered by Mr. Chief Justice MOORE in *Crossen* v. *Murphy,* 31 Or. 114 (49 Pac. 858), as follows:

"The maxim that 'he who seeks equity must do equity' is evidently not violated by the failure of the plaintiff, in a suit to rescind a contract for fraud, to allege a restoration of, or an offer to return, the consideration, or a willingness even to do so, for by his application to the court for equitable redress he concedes that before it will be awarded he must do equity, which will compel him to account for everything of value he may have received, thereby tacitly inviting the court to protect the rights of the defendant by decreeing a restoration in consideration of the rescission."

The principles thus enunciated control the determination of the issue here. The decree of the Circuit Court will therefore be reversed and one here rendered to the effect that the defendants reconvey to the plaintiffs the Hood River County property and that the plaintiffs reconvey to the defendants Nelson Hackett and W. A. Hackett the Portland property, and return to said defendants the promissory note for $400 taken as part of the exchange, together with $600 cash paid thereon; each conveyance to be delivered to the clerk of the Circuit Court for the opposite party within ten days from the entry there of the mandate of this court; and that in default of so doing, the decree shall stand and operate as and for the required conveyance.

REVERSED. DECREE RENDERED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.

Filed January 16, denied January 27, 1920.

PETITION FOR REHEARING.

(186 Pac. 581.)

On petition for a rehearing.  DENIED.

*Mr. Ernest C. Smith,* for the Petition.

*Messrs. Bronaugh & Carter, contra.*

BURNETT, J.—5, 6.  Since the rendition of the opinion in this case the defendants have filed a petition for a general rehearing of the case.  They urge that when early in the negotiations they made the representation about the rentability of the property they themselves had no knowledge of the ordinance forbidding the use of the building simultaneously as an apartment house and as a garage.  On this basis, they contend that the element of knowledge on their part of its falsity was wanting and hence that fraud was not to be predicated of the statement, although it afterwards came to their knowledge during the progress of the trade that their utterance in that respect was in fact untrue.  One of the elements respecting a fraudulent statement is that the one making it must either know that it is false, or make it recklessly without any knowledge of its truth, and as a positive assertion: 20 Cyc. 13.  On this point, the same text, at page 27, says:

"It is not always necessary that the speaker should actually know that his representation is false.  If the statement is of a matter susceptible of accurate knowledge and he makes it recklessly, without any knowledge of its truth or falsity, and in the form of a positive assertion calculated to convey the impression that he knows it to be true, the representation is equally fraud-

ulent. The rule just stated applies, although the speaker honestly believes that the fact which he represents as existing actually does exist. In such a case it is apparent that he cannot believe in the truth of the statement he makes—that he knows the fact to exist—and the fraud consists in passing on his opinion or belief in the guise of positive knowledge. Consequently the speaker is not relieved from liability, although in making the assertion he relies upon trustworthy information.''

Here, the truth of the statements of the defendants was capable of exact verification or refutation. In fact, the representations were untrue and in morals and good conscience, which are the substance of equity, it was the duty of the defendants, having opened their mouths to speak on the subject of the availability of the property as a renting proposition, to disclose what knowledge came to the defendants afterwards about the error of their representation, while yet the negotiations were in progress. It would be quite another matter if they had not undertaken to give any information on that subject. It is one thing to conceal, and quite another merely to remain silent; and concealment may rest upon partial statement and partial silence.

The case of *Frederick* v. *Sherman,* 89 Or. 187 (173 Pac. 575), cited in support of the petition for rehearing, was an instance where the defendants actually had a patent right which they were seeking to sell to the plaintiffs. They made no representations about the solvency of the firm from which they acquired the right. They were not called upon to make any disclosure on that subject. In very truth, after the plaintiffs purchased the right they carried on business for some months before the common grantor failed. The opinion of Mr. Justice BENSON points out clearly that the parties dealt at arm's-length and that since no

statement on the matter of solvency of the defendants' grantor was made, there was no fraud. In *Caples* v. *Steel,* 7 Or. 492, the latter sought to escape from a contract which he had made to sell realty to Caples, because the latter had not disclosed to him the probable fact that there was a coal mine on the premises, of which the owner himself was ignorant. But the court held that Caples was not called upon to make any statement respecting the probability of finding coal in paying quantities on the land, and that, merely having remained silent on the subject, he was not guilty of fraud. *Shute* v. *Johnson,* 25 Or. 59 (34 Pac. 966), was decided upon the principle that the defendant was the confidential agent of the plaintiff when he made representations concerning the value of property which he sought to transfer to the plaintiff, and on account of this fiduciary relation his statements about value were material and, being extravagant, were fraudulent. The opinion in the instant case is not based upon any statements as to the value of the property which the plaintiffs acquired by the exchange. *Shute* v. *Johnson* is therefore not apropos in the present investigation. The principle is that if a party is so reckless as to make a statement which in fact is untrue and while the negotiations are in progress he discovers it is untrue, it is his duty to state the whole truth. The defendants' petition for a rehearing must therefore be denied.

The plaintiffs have filed a petition calling for a modification of the decree herein, so that it shall specifically award to them the chattels involved in the attempted exchange of properties between the parties. Answering this petition, it is suggested by the defendants for the first time, so far as disclosed by the record before

us, that a receiver had been appointed to take charge of the property *pendente lite.*

The complaint alleged that the plaintiffs had retained possession not only of the realty which they formerly owned but also of the personal property then on the premises and which was included in the exchange sought to be impeached, and that the plaintiffs had given notice of rescission of the contract on the ground of the fraud alleged to have been practiced upon them by the defendants. The custody of all the property by the plaintiffs was admitted by the answer. That pleading averred that the plaintiffs were insolvent; that a receiver should be appointed to take charge of the property, and that an injunction should be issued to prevent alienation thereof by the plaintiffs. No order appears in the abstract enjoining the sale of the property or appointing a receiver, and the only information we have about the existence of such an officer is a suggestion made in the defendants' answer to the plaintiffs' petition for a modification of our former decree. The effect of our former holding was to declare void the contract which the parties entered into, with the result that each was to be restored to his own. On the record put before us, stating as it did that the plaintiffs were still in possession of the personalty, there was no occasion expressly to declare them to be the owners thereof.

The statement of counsel for the defendants that the Circuit Court actually appointed a receiver is not controverted. For the purposes of this opinion, therefore, we assume that one was chosen and that he most likely incurred some expenses relating to the property. We have no data whereby we can settle his accounts. That is a matter properly judicable before the Circuit Court which appointed him.

Our former decree will be modified by adding thereto the declaration that the plaintiffs are the owners of the personal property to which they formerly held the title, and that each party shall return to the other all the personal property received from that other in the exchange or account for the value thereof in the settlement to be made by the Circuit Court. The cause will be remanded with directions to that court to settle the accounts of the receiver and the matter of the personal property. *Henderson* v. *Tillamook Hotel Co.,* 87 Or. 74 (169 Pac. 519), may be read with profit respecting the principles upon which the receivership should be adjusted.        REVERSED.    DECREE RENDERED.

REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.