[Decided at PENDLETON July 31, 1897.]

## CROSSEN *v.* MURPHY.

(49 Pac. 858.)

</div>

RESCISSION OF CONTRACT FOR FRAUD — TENDER.— It is a rule of almost universal application that where a defrauded party elects to rescind a sale or other contract he must annul it as a whole, and must return the consideration received, so that the parties may be again, as far as possible, on an even footing: *Frink* v. *Thomas,* 20 Or. at page 271, approved.

EQUITY — RESCISSION — TENDER OF CONSIDERATION.— In a suit in equity to rescind a contract voidable for fraud it is not necessary for the plaintiff to return, or offer to return, before suit the consideration received, but it is enough if he deposits it in court.

LAW ACTION BASED ON RESCISSION — TENDER.— In a law action, based on a rescission of a contract consummated through fraud, the complaint must allege that the consideration has been restored, or that plaintiff is willing to restore.

INFERENCE OF AFFIRMANCE — DELAY.— *The commencement of a suit to rescind a contract of sale, voidable for fraud, three weeks after the vendor discovered the fraud, is not such an unreasonable delay as to warrant the inference of an affirmance of the agreement on his part.*

RESCISSION OF FRAUDULENT SALE.— Plaintiff was in the retail business with a partner, in whose name the lease of the building was made out. The partner, by collusion with members of a mercantile company, sold them his interest and transferred to them the lease. They thereupon gave plaintiff four days' notice to vacate the premises, and offered to buy his interest in the business, giving in part payment certain notes, representing them as first class paper, and also offered to employ him as clerk until the balance of the purchase price should be paid. Plaintiff accepted, and the contract was executed, but he was almost immediately discharged, and the notes proved to be worthless. *Held,* that the circumstances justified a rescission of contract for fraud.

EQUITY JURISDICTION.— *A court of equity which has jurisdiction of a cause at its inception does not lose it because prior to the decree the situation is so changed by the acts of the defendants as to render it possible for a court of law to grant the same relief. Equity in such a case will adjust the entire matter and do justice to all parties.*

From Baker: ROBERT EAKIN, Judge.

This is a suit by Edward E. Crossen against William Murphy, J. W. Stuchell, G. Henderson, and the Harrisburg Mercantile Company to rescind a contract for the sale and delivery of a quantity of merchandise. The facts are that on December 24, 1895, plaintiff and defendant Murphy entered into an agreement by the terms of which they became equal partners in conducting a clothing and furnishing store at Baker City, Oregon; but, the business not proving profitable, they, on April 28, 1896, entered into separate contracts with the defendant, the Harrisburg Mercantile Company, a corporation, for the sale and delivery of their respective interests in the merchandise then on hand, the memorandum executed by the plaintiff stipulating that he was to transfer an undivided one-half of the stock at 90 per cent. of the cost thereof, and in consideration therefor the purchaser agreed to deliver to him the promissory note of L. R. Green, O. Green, and F. E. Green for $200, of J. R. Cartwright for $677, and of W. W. Briggs for $77, to pay one-half of the firm debts, and the remainder of the purchase price in cash within sixty days, and also to employ plaintiff as long as there should be work for him to do, or until the balance due him was paid. An invoice of plaintiff's interest in the stock of goods having been made, on the basis agreed upon, the value thereof, including his interest in the store fixtures, was ascetained to be $1,930.57; insurance policy, $12.47; miscellaneous items, $6.80; cash paid by the firm of Murphy & Crossen, $15; and services rendered

by the plaintiff as clerk, $44.24; making a total credit of $2,009.08. The promissory notes mentioned in the agreement having been indorsed "without recourse," and delivered to the plaintiff, he was charged on the book of the corporation with the amount of the notes, including interest, $964; one-half of the firm debts, $933.28; and cash and goods from the store, $92.55; making the total amount so charged, $1,989.83, and leaving a balance due the plaintiff of $19.25, which was paid to him on June 2, 1896, and he was thereupon discharged, the corporation taking the following receipt as evidence of settlement: "Baker City, June 2, 1896. Received from H. & S. Trading Co., in full for all accounts, nineteen and twenty-five one hundredth dollars. $19.25. Edward E. Crossen." Plaintiff, without the knowledge or consent of the Harrisburg Mercantile Company, erased from each of said notes the words "without recourse," and on September and October 1, 1896, upon the maturity of the Cartwright and Green notes, respectively, he caused them to be protested for nonpayment.

It is alleged in the complaint that Murphy and the defendants Stuchell and Henderson, as president and secretary, respectively, and acting as agents of the Harrisburg Mercantile Company, entered into a conspiracy to compel plaintiff to dispose of his interest in the merchandise at a sacrifice, and to defraud the creditors of the firm of Murphy & Crossen, in pursuance of which Murphy, without plaintiff's knowledge or consent, transferred his interest in the stock of goods, and, the lease of the building occupied by them having been taken in his name, transferred that

also, to the Harrisburg Mercantile Company, on ob-
taining which the agents thereof notified plaintiff to
vacate the said building within four days; and, being
unable to procure another building, he was compelled
to sell and did sell and transfer his interest in the
stock of goods at a loss; that Murphy, being ac-
quainted with Stuchell and Henderson, assured plain-
tiff that any statements made by them could be relied
upon, and that they falsely represented to plaintiff
that each of said notes was first-class bankable paper,
and the makers thereof solvent and able to pay the
same; and, being ignorant of their financial condition,
and relying upon these representations, he was in-
duced to and did accept an assignment of these notes
as security for the payment of the amount so due on
the purchase of the merchandise; that such represen-
tations were false; that the said notes are wholly
worthless and of no value whatever, and that the
makers are, and each of them is, insolvent, which
facts were well known by the said defendants; that
the Harrisburg Mercantile Company, notwithstanding
its agreement to that effect, had failed, neglected, and
refused to pay any of the firm debts, and plaintiff was
being pressed by the creditors for a settlement of the
same.    Issue having been joined, the cause was re-
ferred, and, upon the evidence being reported, the
court found therefrom that said representations were
false, that the plaintiff relied thereon, and that he ac-
cepted said notes as payment in ignorance of the fact
that they had been indorsed "without recourse."
And the court, having further found that they were to
be indorsed in such manner as to render the mercan-

tile company liable in case the makers thereof made default in their payment, rendered a decree awarding plaintiff $964, the amount of said notes, from which the defendants appeal.

AFFIRMED.

For appellant there was a brief over the names of *Martin Luther Olmstead* and *J. D. Slater*, with an oral argument by *Mr. Olmstead.*

For respondent there was a brief and an oral argument by *Mr. Thomas H. Crawford.*

MR. CHIEF JUSTICE MOORE, after making the foregoing statement, delivered the opinion of the court.

It is contended by counsel for defendants that they should be placed in *statu quo*, as a condition precedent to the right to maintain a suit to rescind the contract, and that the complaint is fatally defective because it fails to allege a return or tender of the notes in question. A party to a contract, defrauded by the other party thereto, may avoid the terms of, and rescind, the agreement; but, if he elects to do so, he must annul it as a whole, for he cannot be permitted to treat it as valid in part and bad in some particulars: *Perley* v. *Balch*, 23 Pick. 283 (34 Am. Dec. 56); *Hoffman* v. *King*, 70 Wis. 372 (36 N. W. 25); *Higham* v. *Harris*, 108 Ind. 246 (8 N. E. 255); *Coolidge* v. *Brigham*, 1 Metc. (Mass.) 547; *Bohall* v. *Diller*, 41 Cal. 532; *Purdy* v. *Bullard*, 41 Cal. 444. "It is a general rule," says BEAN, J., in *Frink* v. *Thomas*, 20 Or. 265 (12 L. R. A. 239, 25 Pac. 717), "that in order to disaffirm a contract, and entitle a party to the rights resulting therefrom, the rescind-

ing party must put the other in *statu quo*.  He must account to the other for any money paid in part performance of the contract." The rule is universal that to entitle a party of lawful age, who is mentally responsible, to rescind a contract which he has been induced to enter into by the false or fraudulent representations or evil devices of the other party to the agreement, he must, if possible, place the defrauding party in *statu quo*, by restoring everything of value he may have received as a consideration for the contract, and that a negotiable promissory note executed by a stranger, though insolvent, furnishes no exception; nor can the party seeking the rescission excuse his neglect in failing to return it by showing that it was worthless, by reason of the maker's insolvency, for such an instrument may possess some value to the party who put it into circulation: *Spencer* v. *St. Clair*, 57 N. H. 9; *Evans* v. *Gale*, 21 N. H. 240; *Whitcomb* v. *Denio*, 52 Vt. 382.  It has been held, however, that if the defrauded party has accepted the vendee's own notes in consideration of the execution of a voidable contract, he is under no legal obligation to return them as a condition precedent to the right of rescinding the agreement, but may maintain trover for the goods and chattels, the possession of which he has surrendered, without any previous demand therefor, and also defer the delivery of the notes until the trial, when they may be given up to be canceled upon the rendition of the judgment: *Thurston* v. *Blanchard*, 33 Am. Dec. 700; *Ryan* v. *Brant*, 42 Ill. 78; *Nichols* v. *Michael*, 23 N. Y. 264 (80 Am. Dec. 259).  The reason usually assigned for the existence of this rule is that

the moment the injured party elects to rescind the contract the promissory notes in his possession, which have been given by the defrauding party, *ipso facto* become entirely worthless, and, having been rendered valueless by a failure of the title to the property upon the faith of which they were executed, there is no necessity for returning them; but this principle can have no application to the notes of a third person which may have been accepted as the consideration of the contract, for they are not tainted with the fraud, nor affected by the election of the defrauded party to avoid the agreement, but might be enforced against the maker, or the defrauding party may consider them of some value notwithstanding the rescission.

In *Sisson* v. *Hill*, 18 R. I. 212 (21 L. R. A. 206, 26 Atl. 196), MATTESON, C. J., in discussing the right of a vendor to withhold the consideration of a contract until an action at law to rescind it had been determined in his favor, says: "It has been held that in cases in which the vendor has received from the fraudulent vendee money as a part of the consideration, and in which he sues in trover for the recovery of pecuniary damages for the conversion of the goods obtained by the fraud, he may retain the money, and allow it to go in reduction of the damages to be recovered: *Warner* v. *Vallily*, 13 R. I. 483; *Ladd* v. *Moore*, 3 Sandf. 589. So, too, it has been held in numerous cases in which the plaintiffs have sued in trover that when the fraudulent vendee has given his note, or even the note or other obligation of a third person, as the consideration, in whole or in part, for the goods obtained, it is not necessary for the vendor to return,

or offer to return, such note or obligation before suit, but that it is enough if he bring it into court to be impounded at the trial for the benefit or protection of the vendee: *Duval* v. *Mowry*, 6 R. I. 479; *Thurston* v. *Blanchard*, 22 Pick. 18 (33 Am. Dec. 700); *Frost* v. *Lowry*, 15 Ohio, 200; *Nellis* v. *Bradley*, 1 Sandf. 560; *Ladd* v. *Moore*, 3 Sandf. 589; *Coghill* v. *Boring*, 15 Cal. 213." Mr. Chief Justice AMES, in *Duval* v. *Mowry*, 6 R. I. 479, commenting upon the same principle, says: "Such a condition to a remedy in such a case is wholly unknown in courts of equity, where cases of rescission or cancellation of contracts on the ground of fraud usually come; the court deeming it quite sufficient to provide that justice be done to the injurious as well as to the injured party by its own action: Adams on Equity, 71, and cases cited. No good reason can be given why, when courts of law deal with the rescission of contracts on the ground of fraud, they should not do so, so far as the nature of their remedies will permit, upon the same footing with courts of equity." The principle promulgated in *Sisson* v. *Hill*, 18 R. I. 212 (21 L. R. A. 206, 26 Atl. 196), may well be questioned when applied to an action at law in which the plaintiff deems the contract rescinded; and no doubt the correct rule is announced in a note to the case of *Bryant* v. *Isburgh*, 74 Am. Dec. 661, in which the compiler says: "In legal actions, brought as though the contract had been rescinded, a complaint which does not allege restoration, or an offer to restore, does not state a cause of action: *Van Liew* v. *Johnson*, 6 Thomp. & Co. 648; *Anthony* v. *Day*, 52 How. Prac. 35.  *  *  *  In a suit in equity for a

decree of rescission, the complaint need not allege a tender or offer to perform: *Bloomer* v. *Waldron*, 3 Hill, 366; *Hoyt* v. *Jaques*, 129 Mass. 286."* The maxim that "he who seeks equity must do equity" is evidently not violated by the failure of the plaintiff in a suit to rescind a contract for fraud to allege a restoration of, or an offer to return, the consideration, or a willingness even to do so; for by his application to the court for equitable redress he concedes that before it will be awarded he must do equity, which will compel him to account for everything of value he may have received, thereby tacitly inviting the court to protect the rights of the defendant by decreeing a restoration in consideration of the rescission. This method would permit a vendor who had been defrauded, but who was unable to restore the consideration, to institute a suit to rescind a contract voidable for fraud; for the court could do equity by all parties by decreeing that the amount so received should be a lien upon the property in favor of the vendee. In the case at bar the plaintiff, having deposited in court the notes in question, did all that was required of him in an equitable proceeding.

It is contended that plaintiff, by erasing the words "without recourse" from the notes, and causing them to be protested for nonpayment, conclusively shows that he elected to affirm the contract after his discovery of the alleged fraud. It will, no doubt, be admitted that the commencement of the suit manifests an intention to rescind the contract; and, as the notes

* NOTE.— With the case of *Sisson* v. *Hill*, 21 L. R. A. 206, is a large collection of authorities on the necessity of returning consideration before bringing replevin for property obtained by fraud.— REPORTER.

were not protested until after the complaint was filed, it is evident that the plaintiff elected to avoid the terms of the agreement prior to the protest of the notes. The evidence fails to show when the plaintiff discovered the alleged fraud, or when he erased the qualifying words of the indorsement from the notes. If this erasure were made after the suit was instituted, it could not affect the election to rescind, while, if it were done before discovering the alleged fraud, no inference could be deduced therefrom that plaintiff intended to affirm the agreement. The fraud relied upon as a basis for the relief demanded consists in part in the alleged false representations concerning the solvency of the makers of these notes. The erasure made by the plaintiff did not increase the ability of the makers to meet the payment of their respective obligations, and, this being so, we fail to see how the alteration of the indorsements evidences an intention to affirm an agreement. The plaintiff was discharged from the defendants' employ on June 2, 1896, about which time he claims to have discovered that their representations were false; and, having commenced this suit on the twenty-third of that month, it cannot be said that there was such an unreasonable delay as to warrant an inference of an affirmance of the agreement.

It would be impossible to reconcile the testimony given upon the merits of the principal question, and hence no effort will be made in that direction. Crossen testifies that Murphy, without his knowledge or consent, sold and transferred his interest in the stock of merchandise, and assigned to the Harrisburg Mer-

cantile Company the lease of the building occupied by them, and that Stuchell thereupon notified him to vacate the premises. Murphy, Stuchell, and Henderson contradict this witness as to his statement of want of knowledge of the sale of Murphy's interest, but neither of them denies that he was notified to surrender the building. The term of the lease to Murphy expired prior to the sale of his interest in the merchandise, but he had an option to renew it, which he exercised, and again took the lease in his own name, whereupon he assigned the same and transferred his interest in the goods. This methcl was, no doubt, designed and operated to compel plaintiff to dispose of his interest in the merchandise; but, having been offered employment by the Harrisburg Mercantile Company upon acquiring such interest, he seems to have had confidence in its agents, notwithstanding their notice to him to vacate the premises. While plaintiff might possibly have been obliged to vacate the building theretofore occupied by the firm of Murphy & Crossen, he nevertheless had the right to retain the assests for the purpose of winding up the affairs of the co-partnership: *Marx* v. *Goodnough*, 23 Or. 545 (32 Pac. 511); *Miller* v. *Brigham*, 50 Cal. 615. " Whenever undue advantage," says SHERWOOD, J., in *Bell* v. *Campbell*, 123 Mo. 1 (45 Am. St. Rep. 505, 25 S. W. 362), "is taken of a party, 'under circumstances which mislead, confuse, or disturb the just result of his judgment, and thus expose him to be the victim of the artful, the importunate, and the cunning; where proper time is not allowed to the party and he acts improvidently; if he is importunately pressed; if those in whom he places confi-

dence make use of strong persuasions; if he is not fully aware of the consequences, but is suddenly drawn in to act; if he is not permitted to consult disinterested friends or counsel before he is called upon to act in circumstances of sudden emergency or unexpected right or acquisition,—in these and many like cases, if there has been great inequality in the bargain, courts of equity will assist the party upon the ground of fraud, imposition, or unconscionable advantage.' " It is, no doubt, true that plaintiff was offered a valuable consideration for his stock of merchandise; and, if he had received the price agreed to be paid therefor, there could not have been any inequality in the bargain, and a court of equity would not relieve him upon the ground of unconscionable advantage, notwithstanding the method adopted to obtain the title.

The plaintiff testifies that Murphy was acquainted with Stuchell and Henderson, and that he assured him that any statements made by them could be relied upon, and that the latter represented to him that the makers of the notes in question were solvent, that these instruments were valuable, and that they could be cashed at any bank where the makers were known, and, relying upon these representations, and being ignorant of the financial condition of the makers, and not having time to make any inquiry concerning the same, he was induced to and did accept an assignment of the notes under an agreement that the Harrisburg Mercantile Company would become liable thereon as an indorser thereof. All this is denied by Stuchell and Henderson, but they admit saying to him that they had dealt a great deal with

Cartwright; that he owned considerable property, was engaged in raising hops, and they considered him responsible for his obligations; that they did not know the Greens, but relied upon Cartwright's indorsement of their note; that Briggs had no property, but that he had always paid his debts, and they believed he would discharge this obligation. Crossen further testifies that the notes were assigned to him in the evening, after the invoice of the goods was completed, and that he did not notice that they had been indorsed without recourse. Stuchell, Murphy, and Henderson each testify that the indorsements were made in the presence of Crossen, and that Stuchell thereupon, in his hearing, read aloud the memorandum on the notes. Crossen denies this, and he is indirectly corroborated by the testimony of J. W. Rowlend, a disinterested witness, who assisted in making the invoice, and was also a witness to the contract entered into between plaintiff and the Harrisburg Mercantile Company, who says that he did not see the indorsement made nor hear it read, and, if it had been read, he would have heard it. The only evidence of the insolvency of the makers of the notes in question is the testimony of the plaintiff to that effect, and the inference thereof deducible from the protest of these instruments for nonpayment. One thing is evident, however, that plaintiff parted with his title to his interest in the merchandise expecting to receive the value thereof, but in this he has been disappointed. Nor do we think plaintiff is estopped by the receipt given by him in settlement, for at the time it was executed it does not appear that he was aware of the

defendants' conduct of which he complains. It appears that Murphy obtained in cash only sixty per cent. of the invoice price for his interest, while Crossen was to receive ninety per cent. for his share, and this fact is relied upon as tending to show that a price would never have been offered Crossen for his interest unless the notes would have been received in payment thereof. This is probably true; but, even if that be so, the fact remains that plaintiffs' action in accepting the offer was no doubt precipitated by the notice to vacate the premises within four days, and by the offer of the defendants to furnish him employment in the store, and that the action thus brought about resulted in the consummation of an agreement by which plaintiff parted with the possession of his goods for an inadequate consideration.

As hereinbefore stated, a party cannot, as a rule, be permitted to rescind a contract in part, and treat the rest of it as valid. In this case, however, the plaintiff sought relief by a suit to rescind the entire contract, in which a receiver was appointed, who took possession of the merchandise in question; but the defendants, having executed an undertaking to satisfy any decree that might be rendered against them, obtained the discharge of that officer and the restoration of the goods, which they proceeded to sell, and thereupon paid the debts of Murphy & Crossen in accordance with their agreement so to do. Most of the goods having been disposed of, a decree rescinding the contract of sale became impracticable, in view of which the court below very properly adjusted the controversy by decreeing that the Harrisburg Mercantile Company

pay to plaintiff the sum evidenced by said notes then on deposit in court, leaving the executed part of the contract undisturbed. It is evident that a court of equity, having jurisdiction of a cause at its inception, does not lose it because prior to the decree the situation is so changed by the acts of the defendants as to render it possible for a court of law to grant the same relief. The conclusion we reach on the facts is not free from doubt, but we believe the plaintiff has shown such a course of conduct on the part of the defendants as to entitle him to an affirmance of the decree, and it is so ordered.

                                        AFFIRMED.