STERN et al. v. LOUISVILLE TRUST CO. et al.

NEWBORG et al. v. SAME.

(Circuit Court of Appeals, Sixth Circuit. December 3, 1901.)

Nos. 946, 947.

1. BANKRUPTCY—PREFERENCE—CONSPIRACY OF CREDITORS.

Before the bankruptcy proceedings, a bankrupt made a general assignment for the benefit of his creditors, and afterwards conspired with certain creditors that his estate should be sold to their agent for less than half its value, who should resell, and out of the profits pay such creditors 50 per cent. of their claims, and return the surplus to the bankrupt. The scheme was executed as so agreed, and thereafter the debtor was adjudged a bankrupt. *Held*, that such application of the insolvent debtor's property to the payment of such creditors constituted an unlawful preference, within the meaning of the bankrupt act.

2. INSOLVENCY PROCEEDINGS—SALE BY ASSIGNEE—ORDER OF COURT—FRAUD—PROTECTION TO WRONGDOERS.

Where, by imposition and fraud on the court, an order is obtained to sell the estate of an assignor for benefit of creditors in bulk, and the parties procuring the order use it fraudulently to effect a purchase of the estate for less than half its value, and the sale is not thereafter confirmed or recognized by the court, such order furnishes them no protection.

3. BANKRUPTCY—TRUSTEE—RECOVERY OF PREFERENCE—RESTORING CONSIDERATION.

Where certain creditors of an insolvent fraudulently purchased his property for less than half its value, and the consideration paid by them is received by the trustee afterwards appointed on the debtor being adjudged a bankrupt, such trustee may recover the value of the property less the amount so received by him, without first restoring the purchase money; Bankr. Act, § 60b, authorizing a trustee to recover the property or the value thereof transferred to effect an unlawful preference.

4. SAME—AMOUNT OF PREFERENCE—REPORT OF REFEREE.

Where, on the hearing before the referee of the objection of a trustee to the allowance of claims against the bankrupt's estate on the ground that the creditors had received unlawful preferences, which they had not surrendered, the referee finds such preferences. he should include in his report a statement of the amount so received by each, which he should be required to surrender before his claim is allowed.

Appeals from the District Court of the United States for the District of Kentucky.

These appeals are brought here from the final orders of the district court, sitting in bankruptcy, refusing to allow certain claims presented by the appellants, respectively, as creditors of Simonson, Whiteson & Co., the latter having been theretofore adjudged bankrupt. The proceedings in the principal matter have been the subjects of several preceding controversies, which have been brought under review in this court. 37 C. C. A. 337, 95 Fed. 948; 40 C. C. A. 474, 100 Fed. 426; and 47 C. C. A. 51, 107 Fed. 898. Upon the presentation of the claims now in question, the trustee filed objections to their allowance until the creditors tendering the claims should surrender certain preferences which he alleged they had received out of the bankrupt's assets. Upon the hearing before the referee, the parties produced evidence from which the referee found certain facts, and these, with others, of which, being parts of the history of the proceedings in the bankruptcy matter, he was required to take notice, are substantially as follows: Prior to the filing of the petition on which the adjudication was made, Simonson, Whiteson & Co. had made a general assignment for the benefit of creditors under the laws of Kentucky to L. Comingor, as trustee. The assignment was filed with

the clerk of the circuit court for the proper county. The assignee proceeded to dispose of the property, which consisted of a stock of merchandise in a store occupied by the assignor at Louisville. He sold off part of the stock in parcels or by piece, whereupon, a large portion still remaining undisposed of, a fraudulent agreement was made by one Henry Stern, a brother of one of the members of the bankrupt firm, acting in the interest of these appellants and the bankrupts, to which the assignee was a consenting party, whereby it was agreed that the remaining goods should be sold as a remnant in bulk under an order of court to be obtained by the assignee for that purpose; that the sale should be effected in such a way that the property should be bid off by Stern at a price of about $15,000, which was known to be greatly less than its value, or what it would realize if fairly sold, which, as the referee thought, would be three or four times as much; that D. L. Newborg & Son should furnish the money to pay the price; that thereupon the goods should be resold by Stern, and that out of the proceeds certain creditors of the firm—the appellants among them—should receive 50 per cent. of their claims, and thereupon the surplus should be turned over to the bankrupts. The referee further found that through the instrumentality of the assignee, and upon false representation of facts, an order was obtained from the Jefferson circuit court, which had supervision of the execution of the assignment, for the sale of the property in bulk; that the notice of the sale was inadequately published, and that pains were taken to make it as private as possible, without opportunity for inspecting the goods, and that the property was struck off to Stern for the sum of $15,000, he being the only bidder; that the $15,000 were brought into court; that a net sum of at least $47,000 was realized by Stern on resale of the goods; and that in other respects the scheme was carried out, these appellants receiving out of the profits 50 per cent. of their claims. After the sale Simonson, Whiteson & Co. were adjudicated bankrupts, as before stated. A receiver was appointed, and directed by the court to apply to the state court for the funds realized under the assignment, and an order was duly made by the state court that they be paid over to him, which was done, the moneys received including the $15,000 above mentioned. Upon the finding of these and some further facts not material to be now detailed, the referee found that there had been an unlawful preference, and he refused to allow the appellants their claims until they had surrendered it. The appellants petitioned for a review by the district judge, by whom, after a hearing before him, the order of the referee was confirmed. The cases were then brought to this court upon appeals from the order of the district judge.

Stanley E. Sloss, for appellants.

Augustus E. Willson, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the cases, delivered the opinion of the court.

The preliminary question which we have to determine upon these appeals is whether, upon the evidence before him, the referee, and the judge, in reviewing his determination, reached conclusions which he was justified in finding in regard to the facts; and upon this point we have no hesitation in saying that, in our opinion, the findings of the referee are amply sustained by the proofs exhibited by the record. We find no resting place for a doubt that a scheme such as is above set forth was formed by the persons named as parties thereto for surreptitiously taking out of the assets of the insolvent debtor, for a wholly inadequate consideration, a goodly share thereof, paying the appellants and two other favored creditors one-half of their claims, and turning the surplus over to the debtor; and that this programme was substantially carried out as planned. The controlling question of

law in the cases is whether these facts constitute a preference within the meaning of that term in the bankruptcy act. The word is not in set terms defined by the act, but we have no doubt that, so far as the nature of the property transferred is concerned, it includes everything which has capacity for being taken and appropriated to the satisfaction of debts provable under the act. It may be of a legal or of an equitable nature. In respect to the means by which the transfer is effected there is no limitation. However devious the method, if the result is that, but for the act, the creditor acquires property from the debtor which is subject at law or in equity to be appropriated to the satisfaction of the debtor's obligations, that is a transfer within the meaning of the law. Coll. Bankr. (3d Ed.) 356; Loveland, Bankr. 464. By section 60b it is provided that the trustee may recover the property, or the value thereof, transferred to effect an unlawful preference, from the person receiving it. In legal contemplation the persons who received the property of the bankrupt for the purpose of accomplishing a preference in the present instance were the appellants. It was in consequence of their interference that the property was unlawfully diverted to their own use. Stern was an agent simply. It is not material to know whether he had authority from the appellants to do what he did at the time the agreement was perfected. Their subsequent adoption of it by accepting its fruits made them equally responsible for it as if they had prearranged it, and put him forward to act in their place. Unless the circumstance that the goods were sold under an order of the court affects his right or the trustee has done some act which estops him from now holding the appellants for the goods or their value, it must follow that he is entitled to treat the appellants as having received them by way of unlawful preference and as having converted them to their own use.

It is contended for the appellants that the Jefferson circuit court had jurisdiction of the goods and authority to order them sold, and that whatever was done in the exercise of that authority must be held valid by the bankruptcy court, which has since taken possession of the fund which represents the proceeds of the sale. We do not doubt that the general proposition thus advanced is sound. But there are some important considerations which prevent its application here. The proceedings taken to obtain the order from the court were tainted with the fraud of the parties. The court itself was imposed upon by misrepresentation of the quantity and value of the goods. The interest of the creditors other than those conspiring in the agreement was not represented. It was not an adversary proceeding. The order was procured upon the petition of the assignee, who had become the instrument of the appellants in effecting the unlawful purpose they intended. Moreover, the doings of the parties after obtaining the order were never brought to the attention of the court, and the propriety and validity thereof were never adjudged. Even if the order of sale had been free from taint, enough remains in what was subsequently done under cover of it to bring into condemnation the sale and the ultimate disposition of the goods by the appellants. It is true that these preferences did not proceed from the insolvent in the usual manner. The property had been assigned by it for the benefit of

creditors. The trust was in course of execution. With the assent of the assignee, the assignor resumed control of this portion of the assigned property, and converted it to the assignor's own uses and purposes. Undoubtedly, the creditors who were not preferred in this breach of the trust could have complained; but the appellants obtained the property, not under the trust, but in fraud of it. They dealt directly with the assignor; and the assignee, abandoning his place as such, promoted the purposes of those parties. There is no solid ground for any distinction which the appellants can stand upon in the fact that the property received had been the subject of a trust for general creditors. The assignment itself was defeasible, and the insolvent took the very property which would have come, and did eventually come, as his own to the trustee, wherewith to make the preferences. The mere fact that at that time the legal title was not in him cannot, in our opinion, alter the essential character of the transaction.

The other barrier which the appellants interpose is that the trustee, having received the fund which had been brought into the state court, including the $15,000 paid at the sale of the goods, and still retaining the same, has ratified the sale, and cannot be heard to complain of it. But we do not think that consequence necessarily follows. The trustee had the right, if he should elect to do so, to treat the sale as void, and pursue the appellants for the value of the goods in an action in trover, the goods themselves having been scattered beyond recovery. And it is not shown that he has done anything which precludes his exercise of that privilege, or that the appellants have been prejudiced by delay. Was he bound, as a condition to his election to treat the sale as void, to restore the money which had been paid at the sale? Some of the earlier precedents and many dicta of judges upon the subject of rescission would seem to favor the conclusion that he was. This was upon a somewhat technical interpretation of the rule that the parties should be put in statu quo. And doubtless there are many instances in which nothing less than a literal compliance with the rule would meet the requirements of justice. But there is a growing tendency in modern decisions to consider the special facts of the case, and inquire whether the restoration of the purchase money is indispensable, or whether all the rights to which the other party is justly entitled may be protected without the purchase price being tendered back, and, when this is seen to be practicable, to dispense with it as an unnecessary formality. 2 Mechem, Sales Pers. Prop. § 919, and the following cases there cited: Ladd v. Moore, 3 Sandf. 589; Warner v. Vallily, 13 R. I. 483; Crossen v. Murphy, 31 Or. 114, 49 Pac. 858; Poor v. Woodburn, 25 Vt. 234. See, also, Pierce v. Wood, 3 Fost. 519. The cases now under consideration seem to show that the conditions are such that the modification of the rule just adverted to has a fitting application. The goods converted were of much greater value than the sum which the trustee has received of the moneys of the appellants. His damages for the conversion may properly be diminished by the sum already in his hands. If he should have already restored the money, and should get judgment for the entire value, he would take back a sum

which he had restored included in the judgment. The purchaser would pay out of one hand what he had received by the other. It is not difficult to see that it might often happen that this course in obtaining a remedy against wrongdoers would best subserve the interests of justice,—as where the wrongdoer is insolvent. The doctrine, as explained, commends itself to our approval. The trustee is therefore entitled to have the surplus of value beyond that which he has received paid to him as part of the assets of the bankrupts; and, as the appellants received it by way of unlawful preference, we see no reason why they should not be required to restore it before they are allowed to prove their claims against the estate. It is manifest that the bankruptcy court is authorized to inquire and determine the extent of the liability of the appellants. It must do so in every such case, else it cannot be known what sum the preferred creditor must restore to entitle him to prove his claim.

It may be that a more complete statement of the grounds of the objection by the trustee would have been better suited to the trial of the controversy. But the appellants seem to have understood the nature of the issue, and to have adapted their course to it. If more ample specifications were required by them, no doubt the court would have ordered them.

We think, however, that the order of the referee should have specified the sums which the respective appellants should be required to restore to the estate in order to entitle them to an allowance of their claims. The order will be affirmed, with a modification that there be incorporated in it the sums which the appellants, respectively, are required to restore before allowance of their claims. This may be ascertained upon the testimony which formed the basis of the order appealed from.

The appellants must pay the costs of their appeals.