**In re HENRY DUFFY PLAYERS. ***

## HOLLYWOOD IMPROVEMENT CO. v. BLANCHARD.

### No. 6360.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1931.

W. B. Mathews, W. H. Wadsworth, and Ray W. Bruce, all of Los Angeles, Cal., for appellant.

Louis E. Goodman, of San Francisco, Cal., Herman A. Bachrack, of Los Angeles, Cal., and Reuben G. Hunt, of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of California, Central Division, affirming the findings of fact and conclusions of law of the referee in bankruptcy, acting as special master, adjudging the bankrupt company to be the owner of a certain electric sign and ordering said sign to be turned over to the receiver.

The question of the jurisdiction of the special master was not raised, but, on the contrary, according to the certificate on review filed by the referee, "the parties indicated their desire to submit the matter on its merits for determination in this forum."

The special master found the facts to be, briefly, as follows:

The Henry Duffy Players was a corporation, of which Henry Duffy was "the large substantial stockholder." The Hollywood Improvement Company was the owner of a theater building in Los Angeles, Cal., which it leased, under the terms of a written agreement dated January 1, 1928, to the bankrupt corporation. In a bill of sale dated May 16, 1930, the bankrupt company purported to sell and transfer to the appellant all its property in the said theater, consisting of fixtures, replacements, tools, supplies, and "all other personal property." The instrument was ex-

*Rehearing denied September 14, 1931.

738

ecuted by Henry Duffy Players, Inc., by Henry Duffy.

On the same day, the Hollywood Improvement Company caused to be drawn an instrument purporting to cancel the written lease, which had been for a term of twenty years.

On the following day, May 17, 1930, an involuntary petition in bankruptcy was filed against the Henry Duffy Players.

The electric sign in question was fastened to a steel tower or towers. The tower was an integral part of the building, but the sign was "fastened on frames and connected with electric wires," on which frames were "emblazoned in metal the words 'El Capitan.'" The frames were portable and were fastened to the fabricated steel tower by bolts, said fastenings being "temporary, and * * * for convenience and use of the tenant, the bankrupt."

The special master further found that the sign was "a trade fixture and * * * the property of the bankrupt," and that the receiver was "entitled to the possession thereof."

In its brief, the appellant company contends that there existed an oral agreement preceding the written lease as to ownership of "improvements," whereby title to the sign was vested in the appellant. As to this claim, the special master stated: "There never was any agreement made prior to the lease relative to the said trade fixtures, and * * * it is not true that there was an oral agreement by which the signs were installed on the condition that they should be the property of the respondents [the appellant herein and its president, C. A. Toberman]."

The District Court agreed with this finding, saying: "I agree with the master that the evidence does not show that it was orally agreed that the sign lettering should become the property of the lessor; nor did the bill of sale executed by an officer of the bankrupt a few days prior to the bankruptcy, impart any such right of ownership, since there was no consideration for its execution and delivery. It was void as against creditors and the trustee in bankruptcy. See section 47a(2) of the Bankruptcy Act, as amended by Act June 25, 1910, § 8, 11 USCA § 75(a) (2), and section 3440 of the Civil Code of California."

■ The foregoing findings of fact by the special master and by the court below are based on substantial evidence and are not to be disturbed by this tribunal.

■ The sole question here, therefore, is whether or not the electric sign, clearly a trade fixture, belongs to the bankrupt lessee and, through him, to the trustee, or to the owner of the building, the appellant herein.

Section 1019 of the Civil Code of California provides: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

This is in line with the general rule of law. In the case of In re Danville Hotel Co. (D. C.) 33 F.(2d) 162, 167, the following language was used: "The tapestry upon the walls, the tables and beds in the rooms, the settees in the lobby, the chairs, the lamps, and all other similar property obviously never lost their character as personal property, nor in the opinion of the court did the draperies, curtains, and shades. All such property remained suitable to be used in any other location; it was not especially adaptable to this property; it was affixed only by temporary means. * * *"

See, also, In re Lexington Motors Co. of New York, 294 F. 233, 236 (C. C. A. 2): "The trade fixtures of a tenant remain personal property in the eye of the law so far as the right of removal is concerned."

The same doctrine was applied in the case of In the Matter of the Cooknut Corporation, 6 A. B. R. (N. S.) 510, 519.

In the case of In re Howard Laundry Co. (C. C. A. 2) 203 F. 445, 447, it was held that the term "improvements" ordinarily does not relate to trade fixtures, but "to improvements to the realty."

An examination of the lease of January 1, 1928, discloses no mention of the electric sign. In view of the particularity with which the inventory attached to the lease sets forth the articles included thereunder, even down to the last cuspidor and waste basket, the absence of so valuable an item as the electric sign is significant. The silence of the lease as to this fixture, attached as it was as a "temporary appurtenance" or a "detachable instrumentality" that may have been "removed without substantially injuring the building," can hardly be regarded as an inadvertence. Certainly it has not been accounted for in the appellant's brief, save on the theory of a prior oral agreement that the

master and the District Court held did not exist.

We are therefore led to the conclusion that, up to the time of the purported bill of sale and cancellation of lease, executed by the Henry Duffy Players, Inc., the title to the sign remained with lessee.

We will not go into the narrow question of whether or not Henry Duffy, owner of most of the stock of the corporation, but not an officer, was empowered to sign these two documents for the lessee company. We are resting our decision on broader grounds.

The purported bill of sale and cancellation of lease were both executed on the same day—the eve of the Duffy Company's bankruptcy. The same thought motivated each document, namely, to prefer the lessor over and above the other creditors of the insolvent.

The uncontradicted testimony of C. E. Toberman, the appellant's own president, clearly establishes this purpose: "A short time before the bankruptcy I was approached by Mr. Robertson and Mr. Duffy with the statement they were unable to carry on with the theater, that their payroll checks had been turned down by the Bank of Italy, and that they were up against it financially. At that time they owed $13,000.00 for back rent and $2,500.00 guaranteed utility bills. Mr. Duffy stated to me they were unable to go further because the Bank of Italy had stopped their checks and that the newspapers were unwilling to go on and carry their advertising, and he urged me to repossess the El Capitan Theater. I finally consented and they executed a Bill of Sale of the personal property. Having recovered possession of the theater I immediately made arrangements with the staff to carry on."

Such a transaction is at least a preference, if not an actual fraud against the other creditors of the insolvent. It comes squarely within the purview of Bankruptcy Act § 60a and § 60b, 11 USCA § 96 (a) and (b):

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *

"(b) If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. * * * *"

In the case of In re Connolly (D. C.) 100 F. 620, 627, the court said: "The transactions in July, resulting in bills of sale to Jones, were intended to prefer certain creditors of Connolly, including Jones himself. As Jones took part in these transactions, knowing the intention to prefer, and attempting to profit thereby, the bill of sale of July 24, 1899, was void, and (against the trustee) conveyed no title to the property."

See, also, the recent case of In re Putterman et al. (D. C.) 46 F.(2d) 175, 176, and Elliotte v. American Savings Bank & Trust Co. (C. C. A.) 18 F.(2d) 460, 462.

The so-called surrender of the property by the lessee to the lessor, being done under the color of a bill of sale and lease cancellation clearly prejudicial to the rights of the other creditors, was not such an abandonment of the lessee's property as to place it without the reach of the bankrupt's creditors —or of the trustee, who "shall be deemed vested" with all their "rights, remedies, and powers." Bankr. Act § 47a(2), 11 USCA § 75 (a) (2).

The courts have repeatedly refused to allow the provisions of the Bankruptcy Act relative to preferences to be evaded by indirect means. In Stern et al. v. Louisville Trust Co. et al., 112 F. 501, 503 (C. C. A. 6), the court laid down the following doctrine: "However devious the method, if the result is that, but for the act, the creditor acquires property from the debtor which is subject at law or in equity to be appropriated to the satisfaction of the debtor's obligations, that is a transfer within the meaning of the law.

Coll. Bankr. (3d Ed.) 356; Loveland, Bankr. 464."

See, also, Roberts et al. v. Johnson et al. (C. C. A.) 151 F. 567, 570, and In re Blount (D. C.) 142 F. 263, 268, 269.

The special master and the court below properly held that the oral agreement, if any existed, did not convey the title to the sign to the lessor; that the written lease was silent on the subject and that therefore title to the sign was governed by the principles of law applicable to trade fixtures; and that the purported bill of sale and "surrender" of the premises were clearly preferential as against other creditors and would not prevent the trustee, clothed with the rights of "a judgment creditor holding an execution duly returned unsatisfied," from recovering the sign for the benefit of the estate.

Judgment affirmed.