**T. Ryland DODSON, Trustee in Bankruptcy of the Estate of Temple Men's Shop, Inc.**

**v.**

**J. C. LUMPKIN and Security Bank and Trust Company.**

**Civ. A. No. 510.**

United States District Court
W. D. Virginia,
Danville Division.

May 15, 1962.

W. Bascom Jordan, Danville, Va., for Dodson.

John W. Carter, Carter & Carter, Danville, Va., for Lumpkin.

Edwin B. Meade and Frank O. Meade, Meade, Tate & Meade, Danville, Va., for Security Bank & Trust Co.

MICHIE, District Judge.

This suit was instituted by T. Ryland Dodson (hereinafter called the Trustee), Trustee in Bankruptcy of Temple Men's Shop, Inc. (hereinafter called the Bankrupt), against J. C. Lumpkin (hereinafter called Lumpkin) and Security Bank and Trust Company, a Danville, Virginia, bank (hereinafter called the Creditor Bank), to recover a preference alleged to have been given by the Bankrupt to Lumpkin and by Lumpkin turned over

("converted") to the Creditor Bank under circumstances which, it is alleged, did not constitute the Creditor Bank a bona fide purchaser from Lumpkin for a present fair equivalent value.

The facts are not in dispute and the only issue is whether the facts do show that Lumpkin "converted" the preference in a transaction with the Creditor Bank in which it was not a bona fide purchaser for a present fair equivalent value.

Lumpkin was an officer, director and majority stockholder of the Bankrupt. On September 26 1960 he obtained from the Creditor Bank a personal loan in the amount of $6,000.00 on his own note endorsed by his father and secured by his father's savings account in the Creditor Bank. The sum so secured by Lumpkin was turned over by him to the Bankrupt in return for its unsecured demand note.

The affairs of the bankrupt evidently went from bad to worse and on May 19, 1961 it filed its petition in bankruptcy and was adjudicated a bankrupt. But on May 11, 1961, eight days before it filed in bankruptcy, the Bankrupt gave Lumpkin its check in the sum of $6,045.00 in full payment of its note held by Lumpkin. On the following day Lumpkin deposited this check of the Bankrupt in his personal checking account in the American National Bank and Trust Company at Danville (hereinafter called Lumpkin's Bank) and on the same day he drew his check on Lumpkin's Bank in the sum of $5,990.00 payable to the Creditor Bank in payment of his note held by the Creditor Bank as above mentioned and his note was thereupon marked paid and delivered to him and his father's savings account was released as security for the note.

Prior to the deposit by Lumpkin in Lumpkin's Bank of the sum of $6,045.00 received from the Bankrupt his balance in that bank was only $216.31 so that after the deposit it was $6,261.31 which was reduced to $271.31 when Lumpkin's check of $5,990.00 to the Creditor Bank cleared, there having been no other deposits made or checks cleared in the meantime. It is obvious therefore that the source of the money paid by Lumpkin to the Creditor Bank was, except as to $216.31 thereof, the money received by Lumpkin from the Bankrupt the day before.

Soon after his appointment the Trustee instituted this suit against Lumpkin and the Creditor Bank, joining the latter on the theory that the subject matter of the preference given Lumpkin had been "converted" by him to the Creditor Bank under circumstances that did not make the Creditor Bank a bona fide purchaser for a present fair equivalent value.

Lumpkin in his answer denied that the payment to him was a voidable preference but at the hearing he admitted that it was. However there seems to be no controversy as to the fact that the Creditor Bank had no knowledge with respect to the affairs of the Bankrupt or of Lumpkin at the time it received payment from Lumpkin of the note he had given the Creditor Bank.

Clearly the Trustee has a right to recover from Lumpkin. However, though there is nothing in the record as to Lumpkin's financial condition, the Trustee continues to press his claim against the Creditor Bank from which it may be assumed that Lumpkin is insolvent since otherwise the preference could be recovered from him and the Trustee would have no claim against the Creditor Bank.

The legal question arises under § 60, sub. b, of the Bankruptcy Act (11 U.S.C.A. § 96, sub. b) which reads, insofar as material, as follows:

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value * * *."

Since the preference apparently cannot be recovered from Lumpkin the Trustee contends in the alternative, first, that the Creditor Bank received "the property" which was the subject of the preference and that that property can therefore be recovered from the Creditor Bank, or, second, that if it be considered that Lumpkin converted the property then he did so when he delivered his own check to the Creditor Bank and that in such case the Trustee can recover its value from the Creditor Bank on the ground that the Creditor Bank was not a "bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value".

Although neither counsel nor the court have been able to find any authority directly in point, since apparently no such contention has ever been made heretofore, the court has come to the conclusion that the Trustee cannot recover on either of the alternative grounds above stated.

## I.

*The Contention that the Secured Creditor Received the "Property".*

The Trustee contends that Lumpkin did not "convert" the property which was the subject of the preference but passed it on to the Creditor Bank and that the Trustee can therefore recover "the property" from the Creditor Bank.

The word "converted" is not defined in the Bankruptcy Act and its meaning has not been discussed in any reported case that I have been able to find. It is not defined in Black's Legal Dictionary. Of the seventeen definitions given in Webster's New International Dictionary, Second Edition, Unabridged (many dealing with such unrelated meanings as a spiritual conversion, etc.) the most appropriate for present purposes seem to be the following:

"5. To change or turn from one state to another; to alter in form, substance, or quality; to transform; transmute.

\*     \*     \*     \*     \*     \*

"7. To exchange for some specified equivalent; as to *convert* goods into money.

\*     \*     \*     \*     \*     \*

"12. Finance. To change (one form of security obligation, or the like) into an equivalent of another nature."

Especially the latter two definitions, Nos. 7 and 12, seem most nearly to define the meaning which must be intended by the use of the term in § 60, sub. b of the Bankruptcy Act.

I feel therefore that the Creditor Bank definitely did not receive the property which Lumpkin received. What Lumpkin received was the check of an insolvent firm. If he had held it long enough he would not have been able to collect it in full. He very promptly "converted" it by depositing it in his own bank account, thus changing "one form of security obligation \* \* \* into an equivalent of another nature". This was conversion number one for, whereas before he held a claim against an insolvent corporation, he now had converted it into a claim against a solvent bank. However he again converted the property when he drew his own check against his own bank account in Lumpkin's bank and handed it to the Creditor Bank. So the transfer to the Creditor Bank was a conversion of the claim which Lumpkin then had against Lumpkin's Bank. And certainly on the first conversion, made by depositing the Bankrupt's check in Lumpkin's Bank, Lumpkin received a present fair equivalent value, to-wit, the obligation of Lumpkin's Bank to pay out the money on his checks therefor. If this is so then it cannot be contended that recovery may be had from the Creditor Bank on the ground that it had received "the property" which constituted the preference. And whether or not the Creditor Bank was a bona fide purchaser from Lumpkin for a present fair equivalent value becomes immaterial since the Creditor Bank never received the property which was the initial subject of the preference, that property having been converted when it was deposited in Lump-

kin's Bank and Lumpkin having then received for it a present fair equivalent value.

The fact that Lumpkin subsequently, though presumably insolvent, chose to use the proceeds of the conversion to pay one of his creditors in preference to others cannot help the Trustee here since, even if Lumpkin had been thrown into bankruptcy, the reference that he gave to the Creditor Bank would not have been a voidable preference since it is conceded that the Creditor Bank had no reason to believe that the Bankrupt was insolvent and there is nothing in the record to indicate that it had any knowledge whatsoever of Lumpkin's affairs.

## II.

*Creditor Bank as Purchaser for Present Fair Equivalent Value.*

Even if it were held (which, as indicated above, I do not think possible) that Lumpkin did not convert the property which was the subject of the preference when he deposited it in Lumpkin's Bank but only when he gave his own check to the Creditor Bank, nevertheless it seems to me that the Creditor Bank was "a bona fide purchaser from" Lumpkin "for a present fair equivalent value" and that for this reason also there can be no recovery against the Creditor Bank.

The Trustee contends that the surrender of Lumpkin's note by the Creditor Bank was not a present fair equivalent value of what it received. The argument must be that the extinguishment of Lumpkin's existing indebtedness to the Bank was not a *present* value since Lumpkin had previously received the money that he borrowed from the Creditor Bank. If this argument is sound it would seem to follow that when a creditor forgives an indebtedness the debtor has not received anything of value since he had received the borrowed money previously. This of course is absurd since the net worth of the debtor has been increased by the forgiveness of his debt. So here, while there has been no increase in the net worth of Lumpkin as a result

of his payment to the Creditor Bank, nevertheless his estate has not been diminished so that he has received full value for what he gave, full value being the cancellation of his indebtedness, and it was a present value since he received it at the moment he gave his check to the Creditor Bank.

Counsel for the trustee cite certain cases the substance of the holding of which is that "Mere circuity of arrangement will not save a transfer which effects a preference from being invalid as such". Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419. See also National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042; Grandison v. National Bank, 2 Cir., 231 F. 800; Crooks v. People's National Bank, 46 App.Div. 335, 61 N.Y.S. 604; and In re Henry Duffy Players, 9 Cir., 50 F.2d 737. This proposition will of course be conceded. But there was no circuity here. The preference was paid directly to Lumpkin. The Creditor Bank received no preference from the Bankrupt and could not have as it was not a creditor of the Bankrupt.

Counsel also cite National Bank of Suffolk v. American Bank & Trust Company, 163 Va. 710, 177 S.E. 229, 97 A.L.R. 1205, as apparently holding that one who takes a check in payment of a preexisting debt is not a holder in due course. But the case seems to me to hold just the reverse of that. The check sued on in that case was just such a check—given in payment of a preexisting debt. The plaintiff recovered below. The principal contention on appeal was that the plaintiff was not a holder in due course and the court in affirming the judgment below said at p. 723, 177 S.E. at p. 234:

"* * * We, therefore, conclude that a payee who receives a completed negotiable instrument from the holder thereof, for value, before maturity, without notice of any infirmity, and in good faith, is a holder in due course within the purview of the Negotiable Instruments Law. * * *"

The plaintiff further argues that, because "fair value" is defined in § 67, sub. d(1) of the Act (11 U.S.C.A. § 107, sub. d(1)), for the purposes of § 67, sub. d only, to be something less than that the recipient be a "bona-fide purchaser * * for a present fair equivalent value," the Creditor Bank, which plaintiff appears to admit gave "fair value", as so defined, does not necessarily come within § 60, sub. b (11 U.S.C.A. § 96, sub. b) as a "bona-fide purchaser * * * for a present fair equivalent value".

This must, of course, be admitted. But it does not help plaintiff if, as I believe, the Creditor Bank has met not only the standard of "fair value" but also the additional requirements to bring it within the provisions of § 60, sub. b. And in any event the point is immaterial if, as I have tried to show above, the Creditor Bank did not receive the subject matter of the preference but rather the proceeds of the subject matter of the preference after the preference had been converted by Lumpkin by depositing the check which constituted the preference in Lumpkin's bank.

It must also be borne in mind that when the Creditor Bank, in return for Lumpkin's check, surrendered Lumpkin's note to him it surrendered not only its claim against Lumpkin but also its claim against Lumpkin's father who was an endorser on Lumpkin's note and it released Lumpkin's father's savings account which it had held as security for the note. The giving up of that claim and that security alone would appear to constitute a giving of present value. For while, if the Trustee should succeed in this litigation, the Creditor Bank's claim against Lumpkin would doubtless be revived, it is, to say the least, doubtful that its claim against Lumpkin's father would be revived as he was in no way a party to Lumpkin's securing a preference from the Bankrupt and using the proceeds thereof to pay off the Creditor Bank. And certainly the security of the savings account would not necessarily have been revived as it might have been withdrawn and dissipated in the meantime.

The Trustee argues that the Creditor Bank's claim against Lumpkin's father would be revived if the Trustee recovers from the Creditor Bank because the surrender was based on a mistake of fact. But that is difficult to believe. Lumpkin knew all of the facts and the Creditor Bank knew nothing of them and had no thought about them other than that it was presented with a check of Lumpkin which it assumed would be good, as it was. It was not concerned with the source of the payment and was not mistaken as to it since it made no inquiry and was under no obligation to make any.

So I feel that the Trustee is wrong on both of his alternative theories because, first, the property which was the subject of the preference was converted when Lumpkin deposited the Bankrupt's check in his own account and received full credit for it and, second, even if the check given by Lumpkin to the Creditor Bank could be deemed to be the same property as the check of the Bankrupt that Lumpkin had received, nevertheless he received a present fair equivalent value for it when he paid the Creditor Bank and received back from it his note endorsed by his father.

As aptly stated by counsel for the Creditor Bank in their trial brief, "To hold otherwise would require every banking institution, every merchant, and every person engaged in services, to inquire of its customer, client or patient, the source of his payment regardless of whether payment was made by cash or negotiable instrument. * * *

"It would seem proper to assume that paragraph b of § 96 would not apply to the factual situation at hand. When the preferential property (such as a check, negotiable instrument, deed, stock certificate, tangible personal property, etc.) is transferred by the preferred creditor to a third person the property itself indicates its source, but where the preferential property has been converted to a different form, particularly to cash or a negotiable instrument such as a check, the third person is put on no notice and in fact is justified under the provisions of

the Uniform Negotiable Instruments Act to accept same without question unless there is some defect on the face of the commercial paper."

Judgment will be entered accordingly in favor of the plaintiff against the defendant J. C. Lumpkin but in favor of the defendant Security Bank and Trust Company.